308 So.2d 242

Harland L. RADUE

v.

Wadell ZANATY et al.

SC 582.

Supreme Court of Alabama.

Feb. 13, 1975.

George Hibbert, Atlanta, Ga., for appellee Federal Reserve Bank of Atlanta.

John J. McMahon, Jr., Birmingham, for appellee First Natl. Bank of Birmingham.

London, Yancey, Clark & Allen and Max Hudson, Birmingham, for appellee Fidelity & Deposit Co. of Maryland, a Corp.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for appellee Agnes Baggett, Treasurer of the State of Ala.

———◆———

Harland L. Radue, pro se.

HEFLIN, Chief Justice.

This is an appeal from a dismissal under Rule 12(b)(6) of the Alabama Rules of Civil Procedure for failure to state a claim upon which relief can be granted. That judgment is affirmed.

The plaintiff-appellant in this case, Dr. Harland L. Radue, has been to this court before; see Radue v. Bradshaw, 289 Ala. 481, 268 So.2d 760 (1972). Indeed, the present case seems to be a sequel to his first case. The two cases, however, present different questions of law entirely.

Radue in 1969 was a Birmingham chiropractor. In that year he earned an income but failed to file a state income tax return. Because he filed no return the Department of Revenue made an administrative determination of the tax due the state. Dr. Radue did not appeal in the manner provided by statute, but instead, some months after the assessment was made, filed a bill in equity seeking injunctive and declaratory relief. The Jefferson County Circuit Court dismissed the complaint. This court affirmed, upholding a final assessment against Dr. Radue for $692.11 in taxes for the year 1969. The Jefferson Circuit Court had also assessed court costs against Dr. Radue.

Thereafter Radue wrote two checks, drawn on the respondent First National Bank of Birmingham, in the amounts of $568.06 and $200.00. (It is not clear why one check was not for the amount of taxes due, but nevertheless the two checks apparently equal the total of the taxes due plus court costs.) These two checks carried at the signature lines this statement: "This signature void if not redeemed in gold and silver coin." On the backs of the checks was another statement: "NOTICE TO ENDORSER—This check is to be redeemed in gold or silver coin as per Article 13 of the Alabama Constitution and Article 1, Sec. 10, U. S. Constitution. Specie payment." Dr. Radue added these two statements after getting the checks certified by the respondent First National Bank of Birmingham.

On May 30, 1973, Dr. Radue filed his complaint in the present action; he contended among other things that the two checks satisfied the judgment and assessment of costs.

Dr. Radue's present case is centered around Article 13, Sec. 249, of the Alabama Constitution of 1901 and Article 1, Section 10, of the U. S. Constitution. Article 13, § 249, of the Alabama Constitution provides:

"All bills or notes issued as money shall be at all times redeemable in gold or silver, and no law shall be passed sanctioning directly or indirectly the suspension by any bank or banking company of specie payment."

Article 1, § 10, of the U. S. Constitution provides:

"No State shall * * * make any Thing but gold and silver Coin a Tender in Payment of Debts * * *."

Dr. Radue's complaint sought, among other things: 1) that Respondent Zanaty

(Register of the Jefferson Circuit Court) be enjoined from accepting anything but gold or silver coin as payment of the judgment and costs; 2) that Respondents Fidelity & Deposit Company of Maryland and Nelson & Crabbe Company (which respondents had bonded Dr. Radue) be enjoined from offering payment of the judgment and costs in any tender other than gold or silver coin; 3) that the respondent banks be enjoined from refusing to pay his checks in gold or silver coin; and 4) that the state treasurer be enjoined from accepting payment of the checks in any form except gold or silver coin.

Dr. Radue says he has a right to demand compliance with the constitutional provisions cited *supra,* and contends that without the requested injunctions it will be impossible for him to satisfy the judgment of this court and his allegiance to the constitutions of our state and nation at the same time. Specifically, he says that these constitutional provisions prohibit the State of Alabama from accepting paper money and from paying its warrants in anything but gold or silver.

It is apparent that both constitutional provisions relied upon by the plaintiff place restrictions upon the powers of the state. The United States Supreme court, considering the constitutionality of a congressional act making United States notes legal tender, stated long ago in the case of Juilliard v. Greenman, 110 U.S. 421, 4 S. Ct. 122, 28 L.Ed. 204 (1884):

> "By the constitution of the United States, the several states are prohibited from coining money, emitting bills of credit, or making anything but gold and silver coin a tender in payment of debts. But no intention can be inferred from this to deny to congress either of these powers. * * *"

It does not appear here that the State of Alabama has attempted in any way to make paper money legal tender in payment of debts. Nor does it appear that the State of Alabama has in any way passed a law sanctioning directly or indirectly the suspension by any bank of specie payment.

■ In actuality, Radue's complaint has to be that the Congress of the United States has made paper money a tender for payment of debt. However, the power of Congress to establish paper money as a legal tender has long been decided. Mr. Justice Gray, speaking for the United States Supreme Court, stated in Juilliard v. Greenman, *supra*:

> "* * * Under the power to borrow money on the credit of the United States, and to issue circulating notes for the money borrowed, its power to define the quality and force of those notes as currency is as broad as the like power over a metallic currency under the power to coin money and to regulate the value thereof. Under the two powers, taken together, congress is authorized to establish a national currency, either in coin or in paper, and to make that currency lawful money for all purposes, as regards the national government or private individuals."

■ Mr. Justice Gray further stated in Juilliard v. Greenman, *supra,* that the question of whether to issue paper money as legal tender is a question for Congress:

> "* * * [T]he question whether at any particular time, in war or in peace, the exigency is such, by reason of unusual and pressing demands on the resources of the government, or of the inadequacy of the supply of gold and silver coin to furnish the currency needed for the uses of the government and of the people, that it is, as matter of fact, wise and expedient to resort to this means, is a political question, to be determined by congress when the question of exigency arises, and not a judicial question, to be afterwards passed upon by the courts. * * *"

Judicial review is appropriate only as to the question whether Congress has acted

arbitrarily or capriciously. Norman v. Baltimore & O. R. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352 (1935); Emery Bird Thayer Dry Goods Co. v. Williams, 107 F.2d 965 (8th Cir. 1939), cert. denied, 309 U.S. 655, 60 S.Ct. 468, 84 L.Ed. 1004 (1940).

The Congress, in exercise of its constitutional power, has made all coins and currencies of the United States, including Federal Reserve notes, legal tender, 31 U. S.C. § 392.

Furthermore, in 1935 Congress declared to be "against public policy" any provision purporting to give an obligee a right to demand payment "in gold or a particular kind of coin or currency." This declaration is currently found at 31 U.S.C. § 463(a):

"Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law."

The United States Supreme Court upheld the constitutionality of this section in the case of Norman v. Baltimore & O. R. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352 (1935). In Guaranty Trust Co. v. Henwood, 307 U.S. 247, 59 S. Ct. 847, 83 L.Ed. 1266 (1939), Mr. Justice Black, speaking for the Supreme Court, stated the purpose of this statute:

" * * * The Resolution intended that debtors under obligation to pay dollars should not have their debts tied to any fixed value of particular money, but that their entire obligations should be measured by and tied to the actual number of dollars promised, dollar for dollar. * * *"

Therefore, this court finds the statements written on plaintiff's checks—to the effect that they were to be paid only in gold or silver coin—to be against public policy as declared by the Congress and consequently null and void.

For the reasons outlined above, this court holds that the trial court properly dismissed on the Rule 12(b)(6) motions for failure to state a claim upon which relief can be granted. In short, the appellant has shown no grounds upon which he can be entitled to the relief sought, and it affirmatively appears that he is not so entitled.

Affirmed.

BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.