691 P.2d 1255

**Richard L. HERALD, Petitioner-Appellant,**

v.

**STATE of Idaho, County of Bannock, and Vivian Crozier, Treasurer, Respondents.**

**No. 14385.**

Court of Appeals of Idaho.

Nov. 20, 1984.

Richard L. Herald, pro se.

Stephen G. Larsen, Shawn Anderson, Bannock County Deputy Attys., Pocatello, for respondents.

WALTERS, Chief Judge.

Richard Herald appeals from an order of the district court dismissing his declaratory judgment action to determine "the substance of the money of account of the United States." In his action, Herald queried whether it was legal for him to pay his assessed real property taxes with federal reserve notes. In particular he questioned the authority of Congress to establish the Federal Reserve System and to allow issuance of federal reserve notes as currency through that system. He argued that Art. 1 § 10 of the United States Constitution precludes payment of his taxes in anything but gold or silver coin. The district court, upon motion of the respondent county, dismissed the case, holding that the court did not have jurisdiction to inquire in to what constitutes legal tender. We believe the district court erred in concluding it did not have jurisdiction to entertain Herald's action. However, because under well established rules of law Herald is not entitled to any relief on his assertions, we uphold the dismissal of his action.

In *Juilliard v. Greenman,* 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204 (1884), the United States Supreme Court addressed the authority of Congress over the issuance of currency. The Court said:

> Congress is vested with the exclusive exercise of the analogous power of coining money and regulating the value of domestic and foreign coin, and also with the paramount power of regulating foreign and interstate commerce. Under the power to borrow money on the credit of the United States, and to issue circulating notes for the money borrowed, its power to define the quality and force of those notes as currency is as broad as the like power over a metallic currency under the power to coin money and to regulate the value thereof. Under the two powers, taken together, Congress is authorized to establish a national currency, either in coin or in paper, and to make that currency lawful money for all purposes, as regards the national government or private individuals.

. . . . .

> [T]he question whether at any particular time, in war or in peace, the exigency is such, by reason of unusual and pressing demands on the resources of the government, or of the inadequacy of the supply of gold and silver coin to furnish the currency needed for the uses of the government and of the people, that it is, as matter of fact, wise and expedient to resort to this means, is a political question, to be determined by Congress when the question of exigency arises, and not a

judicial question, to be afterwards passed upon by the courts ....

110 U.S. at 448, 450, 4 S.Ct. at 130, 131.

The principle announced in *Juilliard,* concerning Congress' power to establish and control currency, was reaffirmed in several subsequent cases. *See Norman v. Baltimore & Ohio R.R. Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); *Nortz v. United States,* 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907 (1935); *Perry v. United States,* 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935) and *Guaranty Trust Co. v. Henwood,* 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1939). In *Guaranty Trust* the Court said: "Under these powers, Congress was authorized ... to establish, regulate and control the national currency and to make that currency legal tender money for all purposes .... Whether it was 'wise and expedient' to do so was under the Constitution, a determination to be made only by the Congress." 307 U.S. at 259, 59 S.Ct. at 853. In *Norman,* the Court ruled that Congressional regulation of currency was subject to judicial review only as to whether Congress had acted arbitrarily or capriciously, that is, whether such action has a reasonable relation to a legitimate end. If Congress' action were an appropriate means to a legitimate end, the decision of Congress as to the degree of the necessity for the adoption of that means would be deemed final. 294 U.S. at 311, 55 S.Ct. at 417, *citing Juilliard.*

■ Contrary to the position taken by the district court below, we do not believe the courts are precluded from entertaining issues concerning Congress' power over currency. However, the message from the United States Supreme Court is clear. Under the doctrine of separation of powers, the courts will not question the wisdom or expediency of Congress' determination to issue paper money. Under that view, a majority of the courts, when asked to determine whether federal reserve notes constitute legal tender for the payment of debts and taxes, have concluded that federal reserve notes are legal tender and lawful money of the United States. *See United States v. Whitesel,* 543 F.2d 1176 (6th Cir. 1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977); *United States v. Moon,* 616 F.2d 1043 (8th Cir. 1980); *United States v. Rifen,* 577 F.2d 1111 (8th Cir.1978); *United States v. Daly,* 481 F.2d 28 (8th Cir.1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); *United States v. Hurd,* 549 F.2d 118 (9th Cir.1977); *United States v. Schmitz,* 542 F.2d 782 (9th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Wangrud,* 533 F.2d 495 (9th Cir.1976) *cert. denied,* 429 U.S. 818, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Gardiner,* 531 F.2d 953 (9th Cir.1976), *cert. denied* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976); *Milam v. United States,* 524 F.2d 629 (9th Cir.1974); *United States v. Rickman,* 638 F.2d 182 (10th Cir.1980); *United States v. Ware,* 608 F.2d 400 (10th Cir. 1979); *Radue v. Zanaty,* 293 Ala. 585, 308 So.2d 242 (1975); *Rush v. Casco Bank & Trust Co.,* 348 A.2d 237 (Me.1975); *Allnutt v. State,* 59 Md.App. 694, 478 A.2d 321 (1984); *Richardson v. Richardson,* 122 Mich.App. 531, 332 N.W.2d 524 (1983); *Chermack v. Bjornson,* 302 Minn. 213, 223 N.W.2d 659 (1974) *cert. denied,* 421 U.S. 915, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Middlebrook v. Mississippi State Tax Commission,* 387 So.2d 726 (Miss.1980); *State v. Gasser,* 306 N.W.2d 205 (N.D. 1981); *Dorgan v. Kouba,* 274 N.W.2d 167 (N.D.1978); *First Nat'l Bank of Black Hills v. Treadway,* 339 N.W.2d 119 (S.D. 1983); *City of Colton v. Corbly,* 323 N.W.2d 138 (S.D.1982); *Leitch v. State Dep't of Revenue,* 16 Or.App. 627, 519 P.2d 1045 (1974); *Kauffman v. Citizens State Bank of Loyal,* 102 Wis.2d 528, 307 N.W.2d 325 (App.1981). Consistent with the majority of the courts presented with this question, and in view of the tacit approval evidenced by the United States Supreme Court by refusing certiorari of those rulings when review has been requested, we hold that federal reserve notes are lawful money.

■ Herald also contends that I.C. § 63–1101, requiring taxes to be paid "in lawful money of the United States," violates Art. 1, § 10 of the United States Constitution. The Constitution provides: "No state shall ... make anything but gold and silver coin a tender in payment of debts; ..." In our opinion, Art. 1, § 10, was intended only to limit a state's authority to create its own form of legal tender other than gold or silver coin. Requiring tax payments to be made in lawful money of the United States does not create a new form of legal tender; it simply acknowledges the existing forms of tender established by Congress. Thus, Herald's argument on this point actually is nothing more than an alternate statement of his earlier contention that Congress lacks authority to designate federal reserve notes as legal tender. That contention, as we have noted, lacks merit.

The order dismissing Herald's action is affirmed. Costs to respondent, Bannock County.

BURNETT and SWANSTROM, JJ., concur.