697 P.2d 1216

**STATE of Idaho, Plaintiff-Respondent,**

v.

**David R. GIBSON, Defendant-Appellant.**

No. 14918.

Court of Appeals of Idaho.

March 25, 1985.

David Gibson, in pro. per., for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. Rene Fitzpatrick, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

David Gibson was convicted of failure to carry proof of liability insurance on his motor vehicle, I.C. § 49–245, and failure to register his motor vehicle annually, I.C. § 49–116. The magistrate imposed a fine and one-year probation. Gibson appealed to the district court, which affirmed. He then appealed to us, raising four issues: (1) Do the courts of the State of Idaho have jurisdiction over a case in which the state is a party? (2) Is a "free man," who withholds his consent to be regulated, nevertheless subject to the law? (3) Is a jury of six persons permissible in a misdemeanor case absent the consent of the defendant? (4) Are federal reserve notes legal tender for the payment of state imposed fines? Because we answer each of these questions in the affirmative, we affirm.

## I

Gibson's first argument is apparently that Idaho state courts have no jurisdiction in this case. He cites Article III, § 2, clause 2 of the United States Constitution: "In all cases ... in which a state shall be party, the Supreme Court shall have original jurisdiction...." This original jurisdiction, however, is "not to be interpreted as conferring such jurisdiction in every cause in which the State elects to make itself strictly a party plaintiff of record and seeks not to protect its own property, but only to vindicate the wrongs of some of its people *or to enforce its own laws or public policy against wrongdoers, generally.*" State of *Oklahoma v. Atchison, Topeka and Santa Fe Railway Co.*, 220 U.S. 277, 289, 31 S.Ct. 434, 437, 55 L.Ed. 465 (1911) (emphasis added). We hold that the courts of Idaho, not the United States Supreme Court, have original jurisdiction in this case.

## II

Gibson next argues that he "has not *accepted* the [motor vehicle operator's] license and by not accepting the license, has not consented to be regulated in the Free, and of course, responsible, exercise of his rights of liberty, and the use of his property." (Emphasis original.) In other words, he contends that he need not obtain liability insurance or register his car unless he first agrees to obtain an operator's license. Only then, according to Gibson, is a "contract" with the state created, binding him to the laws related to the use of motor vehicles. The "rights of liberty," however, are not entirely free. Individuals must sacrifice part of their "liberty" in order to empower a government to regulate, through passage and enforcement of laws necessary for the general public welfare. John Locke, the English philosopher who wrote of government and freedom, said: "Where there is no law, there is no freedom." Quoted in W. BLACKSTONE, COMMENTARIES ON THE LAW 69 (B. Gavit ed. 1941). A law is "an ordinance of reason for the common good, made and

promulgated by him who has care of the community." L. FRANKEL, LAW, POWER AND PERSONAL FREEDOM 64 (1975) (quoting St. Thomas Aquinas).

■ Blackstone also commented on man's liberty:

The absolute rights of man, considered as a free agent, are denominated the natural liberty of mankind, which consists in a power of acting, as one thinks fit, without any restraint or control, unless by the law of nature; being a right inherent in us by birth, when God endowed man with free will. But every man, when he enters into society, gives up a part of his natural liberty, as the price of so valuable a boon, and obliges himself to conform to those laws, which the community has thought proper to establish. Otherwise there would be no security to individuals in any of the enjoyments of life.

BLACKSTONE, *supra*, at 68–69. Gibson "entered into" our society when he began to live in it. He has no right to unilaterally withdraw from society, rejecting his obligations to that body, while at the same time retaining the advantages of that society—advantages for which others have sacrificed part of *their* liberty. John Marshall, the great Chief Justice of the United States, said "the best rule for freemen ... in the opinion of our ancestors [those who had produced and ratified our constitution], was ... that ... of obedience to laws enacted by a majority of" the people's representatives. II A. BEVERIDGE, THE LIFE OF JOHN MARSHALL 402 (1916). *See also Mutual Loan Co. v. Martell*, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175 (1911). Marshall also stated:

Whenever hostility to the existing system shall become universal, it will be also irresistible. The people made the constitution, and the people can unmake it.... But this supreme and irresistible power to make or to unmake, resides only in the whole body of the people; *not in any sub-division of them*. The attempt of any of the parts to exercise it is usurpation, and ought to be repelled by those to whom the people have delegated their power of repelling it.

IV A. BEVERIDGE, THE LIFE OF JOHN MARSHALL 352 (1919) (emphasis added).

Furthermore, we note a premise dating back at least to the time of Plato: "The 'just powers' of government derive from 'the consent of the governed.'" E. Rostow, "The Obligation To Obey Valid Law In A Society Of Consent," in FRANKEL, *supra*, at 759. Rostow concluded from this premise that

in a society of consent the powers of government are just in Jefferson's sense: that is, they are legitimate, because authorized and renewed by procedures of voting all must respect. As a consequence, a citizen of such a society owes his fellow citizens, and the state they have established together, a moral duty to obey *valid* laws until they are repealed or fall into desuetude.

*Id.* (emphasis original). Indeed, one of the maxims of common law provides: "The sovereignty of the state over its citizens is supreme." BLACKSTONE, *supra*, at 952.

■ While our discussion of Gibson's first two issues has been general, we are inevitably led to these specific conclusions: The laws requiring an operator of a motor vehicle to carry proof of liability insurance in his motor vehicle and to register the motor vehicle annually are valid laws enacted by the state. *See, e.g., State v. Reed*, 107 Idaho 162, 686 P.2d 842 (Ct.App.1984). Gibson has a legal duty to obey them.

### III

■ Gibson also argues that he did not voluntarily consent to being tried by a six-person jury and he therefore had the "right to a Common Law Jury of twelve." Article 1, § 7 of the Idaho Constitution provides in part that: "in cases of misdemeanor and in civil actions within the jurisdiction of any court inferior to the district court, whether such case or action be tried in such inferior court or in district court, *the jury shall consist of not more than six*." (Emphasis added.) The Idaho Constitution thus not

only permits a six-person jury, but it *forbids* a greater number. A jury composed of less than twelve is also permissible under the sixth amendment to the United States Constitution. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In *Williams,* the trial court refused the defendant's request to seat a twelve-person jury instead of a six-person jury. The Supreme Court held that such refusal did not violate the defendant's constitutional rights. The defendant's lack of consent in *Williams* did not imbue him with the right to a jury of twelve; nor did Gibson's lack of consent allow him to insist upon such a jury. Neither the Idaho nor the United States Constitution requires it.

### IV

Gibson finally argues that the state cannot compel him to pay his fines in federal reserve notes. This is not a novel argument. *See* cases cited in *Herald v. State,* 107 Idaho 640, 691 P.2d 1255 (Ct. App.1984). He claims if a state can require fines to be paid in federal reserve notes, that state violates Article I, § 10 of the United States Constitution. The constitution does, in fact, forbid *states* to "make anything but gold and silver coin a tender in payment of debts." However, Congress, which *is* authorized to coin money and regulate its value, has decreed federal reserve notes to be "legal tender for *all* debts, *public* and private." 31 U.S.C. § 392 (emphasis added). State officials are bound by the definition of legal tender promulgated by Congress. If Congress has defined federal reserve notes to be legal tender, states must abide by such a definition. *See Allen v. Craig,* 1 Kan.App.2d 301, 564 P.2d 552 (1977). Therefore, the state may compel payment of fines in federal reserve notes or other coins and currencies of the United States. We wish to assure Gibson that payment of his debts by means of federal reserve notes extinguishes those debts and leaves him indebted to no one.

We have examined the other arguments presented in this case and find them also to be without merit. The district court's order is affirmed.

WALTERS, C.J., and BURNETT, J., concur.