Frank ANNAS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–954.

Court of Appeals of Alaska.

Oct. 10, 1986.

Frank F. Annas, in pro. per.

Peter G. Ashman, Asst. Public Defender, Palmer, and Dana Fabe, Public Defender, Anchorage, for appellant.

Eugene B. Cyrus, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Palmer, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Frank F. Annas was convicted by a jury of driving while intoxicated, AS 28.35.-030(a), and of refusal to submit to a breath test, AS 28.35.032(f). Annas appeals. We affirm.

Frank Annas was arrested for drunk driving on January 2, 1985. The record reflects that Annas was initially contacted by a state trooper when the trooper observed him traveling in the wrong lane on a side street. After making contact, the trooper asked Annas to sit in the patrol vehicle and interrogated him regarding his consumption of alcohol and his operation of the motor vehicle. The trooper then administered a field sobriety test and a Preliminary Breath Test (P.B.T.). Following the administration of the P.B.T., the defendant was arrested and interrogated further. The defendant was then taken to the Palmer Police Station where interrogation and sobriety tests were video-taped.

During the video-taping, Annas was asked if he would submit to a chemical breath test. Annas indicated that he wished to delay the test until his brother-in-law, Robert Thein, Sr., arrived. The trooper indicated that the breath test could not be delayed and that Annas would have to either accept the test or reject it. Annas then refused to submit to the test, indicating that he would not take the test until he had had an opportunity to talk to his brother-in-law.

Annas first argues on appeal that the trial court erred in denying his request to be represented by lay counsel of his choice. Annas apparently wished to be represented by Thein from the outset of this case. The trial court rejected Annas' request, holding that it had no discretion to permit representation by a lay person. In *Skuse v. State*, 714 P.2d 368, 371 (Alaska App.1986), we held that a trial court's denial of lay representation for any reason would not result in a new trial unless the defendant could show "prejudice." Annas argues that he was prejudiced here. First, he contends that, unlike *Skuse*, he was incapable of representing himself. Second, he argues that he was determined to be represented by his brother-in-law and thus refused to accept assistance from the public defender. He concludes that his unwillingness to form a meaningful attorney-client relationship with the public defender, coupled with his inability to represent himself, constitutes prejudice as a matter of law. Under the circumstances of this case, however, we disagree.

After his arrest, Annas first appeared before the court on January 10, 1985. At that time, his brother-in-law, Robert Thein, purported to speak for him. Thein indicated that Annas did not read, write, or understand his legal rights. Thein said that, while Annas' hearing was normal, his ability to understand what was said was impaired.

On the same day, Thein and Annas filed a purported Affidavit and Notice of Special Appearance. In his notice, Annas demanded all of his rights at law, stated that he was not a licensed driver and was therefore exempt from the implied consent legislation, indicated that he could not read or write, and requested counsel of his choice. He also objected to the court's jurisdiction.[1]

1. Annas perceives himself as a "free man," who has not contracted with the State of Alaska to

The trial court did not rule on Annas' motion at that time, referring him to the public defender.

On January 16, 1985, the court appointed the public defender to represent Annas. On January 28, 1985, Annas filed a number of *pro se* motions purporting to assert "common law rights." [2] He included a Notice of Assistance of Counsel. In this notice, Annas argued that the constitutional right to counsel encompassed a right to lay representation. Thus, he argued, the court could not constitutionally limit appointment of counsel to appointment of licensed attorneys. On February 6, 1985, Annas filed an affidavit with the court on public defender stationary. In his affidavit, Annas indicated that after talking with the public defender assigned to his case, he had decided he did not want a licensed attorney to represent him. In the meantime, Annas filed a Motion to Dismiss on the ground that he was mentally illiterate. He supported this motion with his wife's affidavit, which indicated that he had only a sixth-grade education, that he could not read and write, and that he had substantial memory problems due to illness and age. His wife specifically stated in her affidavit:

> Defendant does not have the knowledge or memory to comprehend LAW. He cannot make notes or do research both of which are necessary, if he were to present facts, in his case for this court.

At a hearing on March 13, 1985, Annas reiterated both his unwillingness to be represented by the public defender and his demand that his brother-in-law be permitted to represent him. The public defender indicated that he was unwilling to represent Annas without Annas' approval. The court, however, refused to allow Annas to be represented by his brother-in-law. Af-

ter the hearing, the trial court ordered the Langdon Psychiatric Clinic to examine Annas to determine his competency to represent himself and to assist at trial. While the court awaited the competency report, the public defender formally moved to withdraw because of Annas' unwillingness to be represented by an attorney.

On April 1, 1985, Dr. Aaron S. Wolf, a psychiatrist, filed a report with the court regarding Mr. Annas' competency. Generally, he found Annas competent to assist in his own defense as long as he had an attorney. Dr. Wolf believed, however, that Annas was not competent to represent himself. Dr. Wolf concluded:

> In evaluating this case, I have taken into account the general question of incompetency plus the affidavit listed by Mr. Annas. It would seem that Mr. Annas would indeed be competent to stand trial in the normal course of events of having a lawyer be his legal counsel. Because he cannot read, the legal counsel would have to take a great deal of time in explaining his rights, trial motions, availability to waive rights, etc.; in terms of any kind of legal matter, the counsel would also have to explain such things [as] the rules of the court and those issues. I do believe that Mr. Annas has the requisite ability to understand these if presented clearly and at length in an all fashion [sic]. It would seem that the model for this would be a number of people in the rural parts of the state who are non-readers of the English language and who must have their rights explained to them from a verbal point of view. Mr. Annas, however, is stating very clearly that he does not wish the public defender to be his counsel. I do believe that all of the nuances are indeed beyond his scope of

---

make commercial use of its highways. Consequently, he concludes, he is not subject to licensing regulations and therefore is not subject to the implied consent laws.

In reviewing Annas' claim, we must differentiate between (1) his efforts to assert and preserve novel legal claims, (2) his fear that, by cooperating with the public defender and the court, he

might somehow waive the right to assert those claims, and (3) his competency—as affected by inability to function effectively based upon physical, mental, or emotional disability.

**2.** Mr. Annas was permitted to file a *pro se* brief in this case asserting most of these issues. We discuss them below. *See infra* n. 8.

learning. Perhaps because of his anxiety, his being a non-reader, and perhaps some organicity associated either with age or his coronary artery disease, he simply does not have the requisite ability, mostly because of his memory problems, to be his own counsel. If this were the case, he certainly is not competent to proceed.

On April 15, 1985, the trial court held a hearing on Dr. Wolf's report. At the hearing, all parties seemed to agree that Annas was not competent to represent himself. Annas, Thein, and the public defender all advocated that Annas be permitted to have Thein as counsel. The public defender reiterated his request to withdraw. The court then adjourned the hearing so that Dr. Wolf could be present. After hearing testimony from Dr. Wolf, the trial court found that Annas was not competent to represent himself and denied the public defender's request to withdraw. The court also denied Annas the right to be represented by his brother-in-law, however, the court authorized the brother-in-law to sit at the counsel table at trial.

■ A criminal defendant, who is competent to do so, has a right to waive counsel and represent himself. *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *McCracken v. State,* 518 P.2d 85 (Alaska 1974). The right is not absolute, however, and the trial court must assure itself that the defendant is competent to waive counsel. *McCracken,* 518 P.2d at 91-2. In this case, the trial court did not act arbitrarily. It appointed the public defender to advise Annas, and had Annas examined by a psychiatrist before ruling on his various requests. Under the circumstances, the trial court properly found that Annas was not competent to represent himself. The trial court was therefore obligated to ensure that he had counsel and to appoint counsel to represent him if he was unwilling or unable to retain counsel.

■ Annas argues that his brother-in-law, a nonlawyer, should have been permitted to represent him in furtherance of the constitutional guarantee. We rejected this argument in *Skuse v. State,* 714 P.2d 368 (Alaska App.1986), where we held that the federal constitutional right to counsel was a right to representation by a licensed attorney.[3] *Id.* at 369-70. Nevertheless, we implicitly ruled in *Skuse* that a trial court had some discretion to allow a competent defendant (*i.e.,* a person who would otherwise be entitled to represent himself) the assistance of a lay person. A prerequisite to lay assistance, however, is a judicial determination that the defendant is competent to represent himself or herself under *Faretta.* Only defendants who knowingly, intelligently, and voluntarily waive counsel, in conformity with Alaska Rule of Criminal Procedure 39(b)(3) and are competent to waive an attorney's assistance, may proceed *pro se* or with lay representation. In this case, it is not seriously contended that Annas was competent to represent himself. Therefore, he was not competent to waive counsel under *Faretta* and *McCracken,* and the issue of lay counsel never properly arose.[4]

In the court below, Annas seemed to argue that the question of his competence

3. Annas notes that we did not consider a possible right to lay assistance of counsel under our state constitution in *Skuse,* 714 P.2d at 370. He vigorously asserts such a right. He has not, however, established that lay representation was so well established in Alaska at the time of statehood, that the constitutional convention must have intended to include it as a constitutional right. *Cf. McCracken,* 518 P.2d at 91. We therefore conclude that "lay representation" is not a retained right under art. I, sec. 21 of the Alaska Constitution, or within the right to counsel established in art. I, sec. 11 of the Alaska Constitution.

4. In *Skuse,* there was no issue as to the defendant's competency to represent himself. 714 P.2d at 369 n. 1. Our decision in this case should not be read as conflicting with the rule that the same test governs competency to stand trial and to waive constitutional rights, including the total waiver of rights encompassed in a plea of guilty. *See Dolchok v. State,* 639 P.2d 277, 293-94 (Alaska 1982); *Morgan v. State,* 582 P.2d 1017, 1021 n. 11 (Alaska 1978).

to represent himself could not be resolved in a vacuum. He argued that the trial court must consider the competency of both the defendant and the other people prepared to assist the defendant. Thus, Annas argues, he was incompetent to represent himself only because he could not read and write and had problems with short-term memory. His brother-in-law, on the other hand, could read and write and had no memory problems. In Annas' view, his brother-in-law's virtues made up for any deficiencies Annas had, so that jointly they were capable of representing Annas. Thus, Annas concludes that his right to self-representation under *Faretta* and *McCracken* subsumes a right to lay representation.

In *Cano v. Anchorage,* 627 P.2d 660 (Alaska App.1981), we considered a related question, that of so-called hybrid representation. In such cases, the defendant elects to represent himself, but requests that standby counsel be made available to assist him. Cano had sought to establish a right to represent himself with the assistance of consultative counsel, but his request was rejected. Cano represented himself at trial and was convicted. We reversed. We based our reversal on two determinations. First, the trial court had only minimally inquired into Cano's ability to represent himself, mistakenly believing that a defendant's right to self-representation was absolute. *Id.* at 662 n. 2. Second, the trial court had erroneously assumed that it lacked discretion to appoint consultative counsel.[5] In light of these two errors, we concluded that Cano should receive a new trial. We did not hold that Cano had a right to consultative counsel, or that someone who was incompetent to represent himself without consultative counsel had a

right to represent himself with consultative counsel. *Id.* at 664–65.

We reject any such holding here. The trial court must first determine a person's competence to waive an attorney's assistance before permitting self-representation, either alone or with lay assistance. In making this determination, the court need not consider the extent to which lay assistance, or consultative counsel, might "remedy" a defendant's incompetency.[6] Hence, since Annas was incompetent to represent himself, and was not prepared to substitute retained counsel within a reasonable time, the trial court did not err in denying both the public defender's motion to withdraw and Annas' motion to be represented by his brother-in-law.

Even if the trial court had failed to exercise its discretion in determining Annas' claim to lay counsel, no prejudice resulted here. Annas' claim of prejudice rests on two contentions. First, although competent to stand trial, he was incompetent to represent himself. Second, he was unwilling to form a meaningful attorney-client relationship with the public defender. The trial court's appointment of the public defender solved any problem regarding Annas' competency. A defendant's mere refusal to be represented by the public defender does not establish the prejudice necessary to require the court to allow assistance of a lay person. The trial court fulfills its obligation under the United States and Alaska Constitutions when it makes available to a defendant a competent attorney. A defendant is not entitled to pick and choose among appointed counsel. *See, e.g., Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Bentley v. State,* 393 P.2d 225, 230–31 (Alaska 1964). *See also V.F. v. State,* 666 P.2d 42, 46–7 n. 5 (Alaska 1983) (applying similar rule to the

---

5. *See McCracken,* 518 P.2d at 92 (trial court has discretion to insist that the *pro se* defendant accept consultative assistance by appointed counsel).

6. Annas' views find some support in Comment, *The Criminal Defendant's Sixth Amendment Right to Lay Representation,* 52 U.Chi.L.Rev. 460, 471 (1985); Welcom, *Assistance of Counsel:*

*A Right to Hybrid Representation,* 57 B.U.L.Rev., 570 (1977); Note, *The Pro Se Defendant's Right to Counsel,* 41 U.Cin.L.Rev., 927 (1972); Comment, *Self-representation in Criminal Trials: The Dilemma of the Pro Se Defendant,* 59 Calif. L.Rev. 1479 (1971). We are unpersuaded by Annas' arguments.

appointment of counsel for indigents in child custody proceedings). Under the circumstances, we hold that a person's unwillingness to assist his attorney, however firmly maintained, does not require a trial judge to permit lay representation.

Annas next argues that his motions were decided by a magistrate who lacked jurisdiction to hear them without Annas' consent, and that the trial court, in this case Judge White, erred by summarily ratifying the magistrate's orders. A review of the record indicates that Annas incorrectly contends that Judge White did not rule on his motions. All proceedings in the case, until the morning of trial, were held before District Court Magistrate Green, although Annas never waived his right to have his trial before a district court judge. *See* AS 22.-15.120(6). Nevertheless, Judge White recognized Annas' rights, and decided all motions pending before him to the extent they were brought to his attention. Indeed, Judge White held evidentiary hearings on some of the motions before proceeding to trial.

Judge White did refuse to consider both evidence that was not in the record, and motions and materials that had not been filed as of the day trial began. However, his refusal to do so was well within his discretion. *See* Alaska R.Crim.P. 12(e). Judge White made it clear that had the motions been timely filed, he would have heard them before trial. *Cf. Fox v. State,* 685 P.2d 1267, 1269–70 (Alaska App.1984) (defendant must show good cause for court to consider untimely motion under Criminal Rule 12(e)).

In resolving this issue, we must distinguish between those motions which Annas filed himself, most of which involved pure questions of law (which the trial court did decide and which will be addressed below), and certain suppression motions filed on Annas' behalf by the public defender shortly before trial. The trial court attempted to hear these suppression motions on the morning of trial, in some cases delaying the trial to permit the taking of evidence. Annas now attacks the trial court's unwillingness to listen to the tape of Dr. Wolf's testimony at the competency hearing before ruling on his evidentiary motions. Judge White indicated that he would consider any evidence in the record, but would not listen to a tape because Annas should have alerted the trial court to the tape's existence before trial in order to avoid delay.

■ Annas also attempts to excuse the late filing of the public defender's suppression motions. He argues that his lack of rapport with the public defender, his request for lay counsel, and the public defender's pending motion to withdraw, all denied the public defender authority to represent Annas until the district court unequivocally ordered the public defender to proceed. We disagree. The magistrate had authority to appoint the public defender to represent Annas. Attorneys must exercise their best efforts to assure that their clients receive a fair trial. This obligation exists whether the attorneys are appointed or retained. The authority to represent a client will differ, however, depending upon whether the attorney is retained or appointed. A retained attorney's authority comes from the client and, subject to reasonable court rules to avoid delay, may be withdrawn by the client. In contrast, the authority of an attorney appointed to represent a defendant comes from the court. Such an attorney must undertake representation and protect the defendant's interests regardless of the defendant's willingness to cooperate.

■ Under the circumstances, Annas' refusal to cooperate and his demand that the public defender withdraw so that he could be represented by lay counsel of choice, did not constitute good cause for a delay in the filing of motions. Neither would these same considerations constitute good cause for a continuance. *See Klockenbrink v. State,* 472 P.2d 958, 964 (Alaska 1970) (trial court has broad discretion in determining whether to grant a continu-

ance).[7]  We therefore conclude that the trial court did not err in refusing to postpone the trial to permit further preparation by the public defender or to consider additional evidence in support of the various motions filed.

Annas next argues that the trial court erred in failing to sever, for consideration by different juries, the charge that he was driving while intoxicated from the charge that he refused to submit to a Breathalyzer examination.  Annas reasons that, until a jury found beyond a reasonable doubt that he had refused to take the breath test (the requirement for a conviction on Count II), it was impermissible for a jury to consider his refusal as evidence pertaining to the charge of driving while intoxicated.  *See, e.g., Montes v. State*, 669 P.2d 961, 964–66 (Alaska App.1983) (defendant entitled to severance where joinder will result in undue prejudice in defending against one of the claims).

■■■  We reject Annas' argument.  Annas has confused the role of the jury in determining guilt under Count II with the trial court's responsibility to rule preliminarily on the admissibility of evidence.  A.R.E. 104 and 403.  In this case, the trial court found that the evidence of Annas' refusal to take a breath test was sufficient, to permit the jury to consider it as evidence, relevant to both counts.  Nothing in the Rules of Evidence or our case law requires severance of charges where evidence that constitutes an element of one offense is also relevant to a defendant's guilt on another offense.  We consider this contention frivolous.

■■■  Annas next argues that the trial court erred in denying his motion to suppress evidence relating to his refusal to submit to a chemical breath test.  He concedes that he refused, but argues that the refusal should not have been used against him.  He claims he was denied an opportunity to seek advice from a friend or counsel prior to being required to submit to the test.  *See*, AS 12.25.150;  Alaska R.Crim.P. 5(b).  *See also Copelin v. State*, 659 P.2d

---

**7.**  We recognize that frequently defendants and their appointed counsel will have strong disagreements over the control and direction of the case.  An attorney, faced with such a disagreement, may find guidance in I ABA Standards for Criminal Justice, The Defense Function, § 4–5.2 (2d ed. 1980), which provides:

*Control and Direction of the Case.*  (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel.  The decisions which are to be made by the accused after full consultation with counsel are:

(i) what plea to enter;

(ii) whether to waive jury trial;  and

(iii) whether to testify in his or her own behalf.

(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.

(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and the client, the lawyer should make a record of the circumstances, the lawyer's advice and reasons, and the conclusion reached.  The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.

Thus, where disagreement between counsel and defendant arises regarding a matter committed to the counsel's discretion, an appropriate record should be made for later use in the event of a post-trial claim of malpractice or ineffective assistance of counsel.  But, after thoroughly explaining the issue to the defendant, counsel should proceed to exercise his or her independent judgment.  As the commentary to the standard points out:

Cases that have reversed convictions for failure of counsel to call certain witnesses, cross-examine, object to evidence, and the like, have been decided not on the ground that counsel should have heeded the client's wishes on such matters, but on a determination that these actions of counsel in these cases were not strategic or tactical decisions but, rather, revealed ineptitude, inexperience, lack of preparation, or unfamiliarity with basic legal principals amounting to ineffective assistance of counsel.  [Footnote omitted]

Commentary to § 4–5.2 at 67–8.  In this case, the trial court held a post-trial hearing pursuant to *Barry v. State*, 675 P.2d 1292 (Alaska App. 1984), and concluded that the public defender had not rendered ineffective assistance to Annas.  Annas has not questioned that conclusion on appeal.

1206 (Alaska 1983), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 357 (1984). Annas, however, never requested an opportunity to consult an attorney before taking the breath test. Consequently, he was not denied any of his rights under *Copelin.* *See Van Wormer v. State,* 699 P.2d 895 (Alaska App.1985) (arrestee must request consultation with counsel). The right to contact counsel does not include a right to have counsel physically present while the breath test is administered. *Copelin,* 659 P.2d at 1211 n. 12. In this case, Annas did not ask to telephone anyone. He demanded the right to withhold his decision regarding the breath test until his brother-in-law was on the scene. To extend that right to an arrestee would destroy the efficacy of the breath test procedure, since blood and breath alcohol levels drop with the passage of time. Consequently, we decline to extend such a right.

Annas next argues that he did not make knowing and voluntary waivers of his right to remain silent and his right to assistance of counsel before making certain statements to the police. Yet, Annas apparently concedes that the record supports the trial court's finding that he knowingly, intelligently and voluntarily waived his *Miranda* rights. Annas' contention is that he did so without the opportunity to consult his brother-in-law. His contention fails, however, because Annas had no legal right to consult with his brother-in-law prior to deciding whether to talk with the police.

Annas next argues that the trial court erred in denying the admission of certain records relating to road conditions on days other than the day on which the incident occurred. Annas relied on the icy condition of the road on the day he was stopped to support some of his contentions. He argues that the condition of the road on other days bolstered his testimony as to its condition on the day in question. The trial court has broad discretion to admit evidence, and we will not overrule its conclusions unless that discretion is clearly abused. *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980). The trial court could properly conclude that the evidence would have only limited probative value which would be outweighed by the prejudice of prolonging the trial while it was considered. *See* A.R.E. 401 and 403. We find no error.

Annas also argues that the court erred in refusing to instruct the jury as follows:

> If the jury reaches a verdict of not guilty on Count Two of the complaint, charging the defendant with refusal to submit to a chemical test of his breath, then the jury shall not consider for the purpose of reaching a decision as to Count One of the complaint, charging the defendant with driving while intoxicated, any evidence relating to the defendant's alleged refusal to submit to a chemical test of his breath.

Annas has not demonstrated that this instruction is a proper statement of the law, therefore, the trial court did not err in refusing to give it.[8]

---

8. In addition to those arguments made by the public defender on Annas' behalf, Annas has filed a *pro se* brief raising a number of issues. Alaska Rule of Criminal Procedure 50(b) provides that the civil rules regarding attorneys shall apply in criminal cases. Civil Rule 81(c) provides that except as otherwise ordered by the court, a party who has appeared through an attorney may not thereafter appear or act in his own behalf in any action or proceeding, unless an order of substitution shall have been made by the court after notice to such attorney. The state has not specifically responded to Annas' brief, and it is possible that the state takes the position that a *pro se* brief submitted by a represented defendant is a nullity. We express no opinion regarding that issue. In the interests of

bringing this case to a final resolution, we have exercised our discretion in favor of addressing those issues separately raised by Annas.

Annas argues that the district court did not have jurisdiction over him and that the state has no authority to regulate his use of his own vehicle on public highways. Annas relies on the fact that he is not a commercial enterprise and that he has never committed any act suggesting that he is a danger on the highways. We reject Annas' arguments. *Compare State v. Gibson,* 108 Idaho 202, 697 P.2d 1216 (1985) (similar arguments rejected); *Gordon v. State,* 108 Idaho 178, 697 P.2d 1192 (1985), *appeal dismissed,* ── U.S. ──, 106 S.Ct. 35, 88 L.Ed.2d 29 (1985). Alternately, Annas argues that since he was not a licensed driver he could not have "impliedly

The judgment of the district court is AFFIRMED.

consented" to take a Breathalyzer examination. Annas misunderstands the scope of the statute. As we noted in *McCracken v. State*, 685 P.2d 1275, 1278–79 (Alaska App.1984), the statute's reference to implied consent involves a legal fiction. A person, who is arrested based on probable cause that she or he was driving while intoxicated, is required by law to submit to a chemical breath test, or suffer the consequences. The consequences are a potential jail sentence, the possible suspension of his or her license, and a fine. The defendant's consent is irrelevant.

Annas next argues that the court should have dismissed the prosecution in this case for lack of a *corpus delicti, i.e.,* evidence establishing the *actus reus* of a crime. In Annas' view, the prosecution must prove the *corpus delicti* of any crime, and the *corpus delicti* in this case would include some showing of loss or injury to someone as a result of the defendant's acts. He concludes that since his driving while intoxicated and refusing to submit to a chemical breath test did not harm anyone, the state has failed to prove a *prima facie* case. We disagree.

It is not necessary for us to decide.in this case whether Annas is correct that the state's burden to establish the *corpus delicti* of a crime includes the burden of showing that the conduct prohibited by the statute presents a risk of harm to others, because such a showing is self-evident in this case. Also, the legislature has concluded that those who drive while intoxicated create an unreasonable risk of injury to others, even if their conduct does not cause physical injury.

By the same token, the legislature has apparently concluded that the best test of a person's ability to drive after drinking is a test of the alcohol content of his or her blood or breath. Refusal to submit to a breath test is therefore a form of suppression of evidence, and injures the state in proceeding to trial. *McCracken*, 685 P.2d at 1277. Consequently, the state has established a *"corpus delicti"* in this case under Annas' understanding of the term and his motion was properly denied.

Annas next argues that the case should have been dismissed because there was no "reliable witness." He reasons that the police officer, who was the only witness against him, had a bias or interest in the outcome of the case and that a conviction cannot be had on the uncorroborated testimony of a biased witness. We know of no such rule. The testimony of a single witness, with first-hand knowledge of the relevant facts, can sustain a conviction, regardless of the witness' bias. The jury determines whether the witness is telling the truth.

Annas finally argues that the trial court erred in refusing to instruct the jury regarding its rights under the nullification doctrine, *i.e.,* that the jury is the sole judge of the law as well as the facts. Annas was not entitled to argue jury nullification or have the jury instructed on nullification. *Skuse*, 714 P.2d at 374 n. 5; *Hartley v. State*, 653 P.2d 1052, 1055 (Alaska App.1982). We therefore find no error.