STATE of Wisconsin, Plaintiff-Respondent,

v.

Kerry B. BJERKAAS, Defendant-Appellant.†

Court of Appeals

*No. 90–1560. Submitted on briefs May 8, 1991.—Decided June 27, 1991.*

(Also reported in 472 N.W.2d 615.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *John M. Brinckman* of *Brinckman & Brinckman* of La Crosse.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

*Amicus curiae* briefs were submitted on behalf of The Wisconsin Association of Criminal Defense Lawyers by *William A. Pangman* of *The Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Kerry Bjerkaas appeals from a judgment convicting her of aiding and abetting the sale of cocaine and an order denying her motions for postconviction relief. The issues are: (1) whether the trial court erred in refusing to instruct the jury on entrapment as a defense; (2) whether the court's failure to consult with counsel before answering a question from the jury during deliberations constituted prejudicial error; and (3) whether the court erred when it precluded defense counsel from arguing "jury nullification"—that the jury had the right to "discard the [court's] instructions and the law and find [Bjerkaas] not guilty because it seems fair."

We conclude that the trial court did not err in refusing to give an entrapment instruction and that Bjerkaas was not prejudiced by the court's failure to consult with counsel before answering the jury's question. We also hold that it was not error to deny counsel's request to argue "jury nullification."

Bjerkaas worked as a server at a pizza restaurant. Two undercover drug enforcement agents, Pat Buckley and Mike Blokhuis, frequented the restaurant and became friendly with Bjerkaas, often chatting with her while they ate and leaving generous tips. Buckley testified that during their conversations Bjerkaas would often make unsolicited comments about her drug use.

Buckley had approximately ten contacts with Bjerkaas prior to the incident that led to her arrest. All were at the restaurant except one, when he took her on a "date" to celebrate her birthday.[1] On that occasion they visited a tavern where they encountered Mike Creuzinger, one of Bjerkaas's co-workers at the pizza restaurant. He came to their table and spoke with them, stating at one point that he could get them any drugs that they wanted at any time.

Several days later, when Buckley and Blokhuis were dining at the pizza restaurant, they asked Bjerkaas if she knew where they could purchase some cocaine. After "checking around," she returned to their table and told them they could get some from Creuzinger. Buckley and Blokhuis returned to the restaurant a few days later to make the purchase, and when they learned that Creuzinger was working in the kitchen, Buckley asked Bjerkaas to ask whether they could meet him in the men's room to make the purchase.

Bjerkaas returned several minutes later and told the men that Creuzinger was too busy to leave the kitchen. She also told them that Creuzinger needed $250 in order to get the cocaine for them. She suggested that Buckley give her the money and she would give it to Creuzinger. She also told him to leave the restaurant and call in a

---

[1]The state characterizes this date as "casual" because Buckley and Bjerkaas barely knew one another. Indeed, Buckley testified that he did not know her last name.

pizza order in a few hours, which would enable Creuzinger to leave the kitchen and deliver the cocaine to them. The sale was consummated shortly thereafter and, as indicated, Bjerkaas was arrested and charged as a party to the offense.

## I. ENTRAPMENT

At the trial's conclusion, Bjerkaas requested that the court instruct the jury on the defense of entrapment. Her request was denied and she claims this was reversible error.

A trial court is justified in declining to give a requested instruction in a criminal case—including an instruction on the defense of entrapment—if it is not reasonably required by the evidence. *State v. Amundson,* 69 Wis. 2d 554, 564, 230 N.W.2d 775, 781 (1975). And when the appeal is from such a denial, we view the evidence "in the most favorable light it will reasonably admit from the standpoint of the accused." *State v. Stoer,* 134 Wis. 2d 66, 87, 396 N.W.2d 177, 185 (1986), quoting *Johnson v. State,* 85 Wis. 2d 22, 28, 270 N.W.2d 153, 156 (1978).

Entrapment may be a defense to a charge when the defendant is "induce[d]" by the police "to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him." *State v. Hochman,* 2 Wis. 2d 410, 413, 86 N.W.2d 446, 448 (1957). Establishing the defense is a two-step process:

> [T]he defendant may assert the affirmative defense of entrapment if he assumes the burden of persuasion to show that he was induced to commit the crime. In the event he has successfully assumed that burden

. . ., the burden then falls on the state to convince the jury beyond a reasonable doubt that, despite the government's inducement, the defendant was predisposed to commit the crime. *State v. Saternus,* 127 Wis. 2d 460, 474, 381 N.W.2d 290, 296 (1986).

"If the defendant cannot discharge the burden of persuasion that there was improper inducement, entrapment drops out as an issue in the case." *Saternus,* 127 Wis. 2d at 479, 474 N.W.2d at 299. Thus, entrapment exists only "where the police have instigated, induced, lured or incited the commission of the crime" to such a degree as to "remove the element of volition from the conduct of the defendant." *Amundson,* 69 Wis. 2d at 565, 230 N.W.2d at 781. Merely seeking or offering to buy drugs is not the kind of inducement which establishes entrapment. *Hawthorne v. State,* 43 Wis. 2d 82, 90, 168 N.W.2d 85, 89 (1969); Wis J I—Criminal 780, comment at 4 (1986). Finally, because the defense of entrapment "is designed to exonerate a person who under ordinary circumstances is 'guilty,' " it is "disfavored" in the law and "should not be . . . entertained lightly by courts." *Saternus,* 127 Wis. 2d at 471, 381 N.W.2d at 294–95.

Applying these principles to the evidence in this case, viewed in the light most favorable to Bjerkaas, we conclude that that evidence does not reasonably require submitting the issue of entrapment to the jury, and that it was thus proper for the trial court to decline to do so. Buckley simply asked Bjerkaas to direct him to a person who previously had offered to sell him drugs.[2] He then asked her to carry a message to that person, who was

---

[2]Such conduct, in itself, does not constitute aiding and abetting the drug purchase. *See State v. Hecht,* 116 Wis. 2d 605, 620–22, 342 N.W.2d 721, 729–30 (1984).

unavailable at the time. But Bjerkaas did considerably more than this: she took several voluntary actions to facilitate the transaction.

Both Buckley and Blokhuis testified that they never asked Bjerkaas to sell them drugs or to obtain drugs for them. Their intention was to purchase the cocaine from Creuzinger; and Bjerkaas, by her own voluntary actions, became the intermediary. She obtained the purchase price from Creuzinger and relayed it to Buckley and Blokhuis; she offered to take the money to Creuzinger, and she obtained information from him as to when and where the transaction could be consummated and carried this information back to the agents.

Bjerkaas argues, however, that Buckley entrapped her through friendship—that he induced her to act as she did by cultivating and developing a friendship with her. Simply cultivating a friendship with a person later arrested for selling drugs, however, does not constitute entrapment. *State v. Boutch,* 60 Wis. 2d 443, 449, 210 N.W.2d 730, 733 (1973). There is nothing in the evidence in this case to indicate that Bjerkaas's activities in furtherance of the purchase and sale of the cocaine were not of her own volition but rather were the result of pressure or inducement from Buckley. The trial court properly refused to give the requested instruction.[3]

---

[3]Bjerkaas contends there is other evidence of entrapment—the belated discovery of one of the agents' daily activity "logs." The agents kept daily logs of their activities and those pertaining to the day of the cocaine purchase and the two preceding days were provided to Bjerkaas prior to trial. At that time the prosecution represented that these were the only logs pertaining to Bjerkaas.

When Buckley testified at trial, he could not recall whether he recorded his "date" with Bjerkaas in his log. During a break in

## II. THE JURY'S QUESTION

Bjerkaas next argues that the trial court committed prejudicial error when it failed to consult with counsel before answering a question propounded by the jury during their deliberations. The jurors sent a note to the court asking whether "entrapment is an issue to be considered" and for a definition of the term. The court, without contacting counsel, simply wrote "no" on the note and sent it back to the jury room.

The state concedes that answering the jury's question without notification of and consultation with counsel was "constitutional error." *See State v. Burton*, 112 Wis. 2d 560, 570, 334 N.W.2d 263, 268 (1983) (in absence of waiver, communications between court and jury during deliberations held to violate defendant's right to be present at trial and thus "constitutional error"). The question thus becomes whether, considering the substance of the court's communication—and the

the proceedings his records were searched and an entry was located for the day in question indicating—without mentioning her name—that Buckley and a "friend" had encountered a possible drug dealer known as "Mike C."

Bjerkaas contends that the belated "discovery" of the log for that day is evidence that Buckley was somehow trying to "cover up" his relationship with her in order to avoid an entrapment defense. We are not persuaded. The three logs given to the defense prior to trial *were* the only logs mentioning Bjerkaas by name. Defense counsel did not request other logs and could have searched all of them had they so desired. There is no evidence that the failure to produce the log was intentional. Indeed, Buckley's confusion at trial prompted the subsequent records search, and that is when the entry in question was located. We agree with the state that "[t]here may have been some misunderstanding, but certainly no deliberate deception."

circumstances under which it was made—in light of the entire trial, the error was prejudicial. *Id.* at 571, 334 N.W.2d at 268.

A constitutional error is harmless if the state can prove beyond a reasonable doubt that it did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 24 (1967). If there is a reasonable possibility, however, that the result of the trial would have been different had the error not occurred, it is prejudicial and requires reversal. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). That is not the situation here.

We already have held that the trial evidence was insufficient to support an instruction on entrapment. As a result, the court's answer to the jury's inquiry was correct. It was a legally appropriate response and we do not see how Bjerkaas can claim harm or prejudice as a result of her or her counsel's inability to be present and make argument to the court before the answer was provided.

Bjerkaas disagrees. She points to the court's use of a broad-tipped pen to write the word "no" at the foot of the sheet of paper on which the jury's question was written. She contends that the effect of this was to emphasize the word, and that it was further emphasized because the jury retained the sheet containing the question and answer in the jury room. Thus, she argues, "given the tone and duration of the [judge's] response," it unfairly prejudiced her defense.

We see no prejudice. Other documents in the record indicate that the trial judge uses a broad-tipped pen as a matter of routine and that there was nothing sinister or out-of-the-ordinary about his using it to answer the

jury's inquiry. The answer was simple, neutral and to the point—and, as we have indicated, it was legally correct. We thus conclude that the error was harmless beyond a reasonable doubt. *Dyess,* 124 Wis. 2d at 543, 370 N.W.2d at 231–32.

### III. "JURY NULLIFICATION"

Finally, Bjerkaas contends that the trial court's refusal to permit her counsel to argue "jury nullification" in closing denied her a fair trial. Prior to the closing arguments, defense counsel indicated that he "want[ed] to use the word fair and concepts of fairness" in his argument and asked the court: "Can I talk about concepts of fairn s?" The court responded that counsel would be permitted to "talk in terms of concepts of fairness in general terms," but if he planned to go beyond arguing "that somehow or other based on fairness that the agents should never have approached Miss Bjerkaas or solicited this from her" or "that [the jury] should discard the instructions and the law and find her not guilty because it seems fair, [he would not] be allowed to do that."

Bjerkaas argues, without citation to authority, that it was error to prohibit her counsel from arguing "jury nullification"—urging the jury to acquit regardless of the law because "a conviction under the[ ] facts [of the case] is unfair." Expanding on the argument, the Wisconsin Association of Criminal Defense Lawyers, as *amicus curiae,* offers an exhaustive discussion of the historical origins and "philosophical contours" of the "jury's prerogative to disregard uncontradicted evidence and instructions of the judge" in order to reach a verdict with "a sense of fairness and particularized justice." According to the association, both the United States and

Wisconsin Constitutions grant juries the "right" to disregard the law and the court's instructions—to "nullify" applicable laws—in search of a verdict the individual jurors believe to be fair. In the association's words (citing an 1852 essay on jury trials): "It is [the jurors'] right, and their primary and paramount duty, to judge the justice of the law, and to hold all laws to be applied in a particular case, invalid, if they are in their opinion, unjust or oppressive, and to hold all persons guiltless of violating or resisting the execution of such laws."

In broadest terms, juries do have "nullification" powers, in the sense that they may acquit a defendant in a criminal case on the basis of extraneous considerations, even when the defendant may be objectively guilty in light of the facts of the case and the court's instructions. *See, generally,* Scheflin and Van Dyke, *Jury Nullification: The Contours of a Controversy,* 43 Law and Contemp. Probs. 51, 56 (Autumn 1980). There is, however, considerable difference between the *power* to nullify the objectively correct application of the law and the *right* to do so.

The nullification power, such as it is, stems from the prohibition against double jeopardy—the government's inability to appeal from even the most lawless acquittal. *People v. Rollins,* 438 N.E.2d 1322, 1327 (Ill. App. 1982). Thus, juries have the power to do what they want in a given case because neither the prosecution nor the court has the authority to compel them to do what they should, once they retire to deliberate their verdict. But this power does not translate to a *right* to have a jury decide a case contrary to law or fact, much less a right to an instruction telling jurors they may do so or to an argument urging them to nullify applicable laws. "[A] defendant has no right to have the jury defy the law or ignore the undisputed evidence." *Rollins,* 438 N.E.2d at

1327. "A defendant has no entitlement to the luck of a lawless decisionmaker, even if the lawless decision cannot be reviewed." *Strickland v. Washington*, 466 U.S. 668, 695 (1984).

> [T]he jury has no such "right" [to acquit "on bad as well as good grounds"] . . . in criminal cases, popular myth notwithstanding. It has the *power* to acquit on bad grounds, because the government is not allowed to appeal from an acquittal by a jury. But jury nullification is just a power, not also a right . . .. *United States v. Kerley*, 838 F.2d 932, 937-38 (7th Cir. 1988) (emphasis in original).

In *Sparf v. United States*, 156 U.S. 51 (1895), an early United States Supreme Court case discussing jury nullification, the Court noted that "it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence" and ruled that there is no federal constitutional right to urge jurors "to take the law into their own hands, and . . . disregard the directions of the court." *Id.* at 102, 106. Modern cases are in accord.[4] Indeed, it has been said that "[i]n most states the jury nullification issue either never arises or has been settled

---

[4]Courts considering the issue have been nearly uniform in ruling that a defendant in a criminal case is not entitled to either argue or have an instruction on jury nullification. *See, e.g., United States v. Brown*, 548 F.2d 204, 210 (7th Cir. 1977); *United States v. Dougherty*, 473 F.2d 1113, 1136-37 (D.C. Cir. 1972); *United States v. Berrigan*, 417 F.2d 1002, 1006 (4th Cir. 1969), *cert. denied*, 397 U.S. 910 (1970); *United States v. Sloan*, 704 F. Supp. 880, 884 (N.D. Ind. 1989); *Annas v. State*, 726 P.2d 552, 561 n. 8 (Alaska App. 1986); *Reale v. United States*, 573 A.2d 13, 15 (D.C. 1990); *Davis v. State*, 520 So. 2d 493, 494-95 (Miss. 1988) (and cases collected); and *State v. Pease*, 740 P.2d 659, 663 (Mont. 1987), *cert. denied*, 488 U.S. 1033 (1989).

adversely since at least the middle 1800's."[5]

While the precise question does not appear to have arisen in Wisconsin, we have recognized that because "[i]t is a basic tenet of our system of government that decisions are based on law, not personal whim," an instruction telling jurors they "could ignore [a] statute if they felt it was unfair" could properly be denied in a criminal case. *State v. Olexa,* 136 Wis. 2d 475, 485, 402 N.W.2d 733, 738 (1987). *See also Williams v. State,* 192 Wis. 347, 352, 212 N.W. 631, 632 (1927) (jurors properly admonished they are not at liberty to disregard the law no matter what their individual views as to its wisdom). Indeed, Wisconsin juries are routinely instructed in criminal cases that they must not be "swayed by sympathy, prejudice, or passion," and that they are to be "govern[ed] in [their] deliberations" by the "rules of law" on which the court has instructed them. Wis J I—Criminal 460 (1962).[6]

Counsel has wide latitude in arguing to the jury; but control of the argument's content remains within the sound discretion of the trial court. *State v. Stinson,* 134

---

[5]Scheflin, *Jury Nullification: The Right to Say No,* 45 So. Cal. L. Rev. 168, 201 (1972). In a subsequent article, Professor Scheflin, an ardent and widely-published advocate of nullification, asserts that "the jury nullification argument has acquired important judicial and academic support in the last ten years." Scheflin and Van Dyke, *supra,* 43 Law & Contemp. Probs. at 63. However, he can point only to a few peripheral sources. Jurisdictions recognizing a right to a jury nullification instruction appear to remain a distinct minority. *See* note 4, *supra.*

[6]In addition, all jurors, when seated, are required to take an oath (or to affirm) that they will render "a true verdict . . . *according to law* and the evidence given in court." Sec. 756.098(1)(a), Stats. (emphasis added).

Wis. 2d 224, 241, 397 N.W.2d 136, 143 (Ct. App. 1986). And the trial court's ruling will stand unless there has been an abuse of discretion that is likely to have affected the jury's verdict. *State v. Lenarchick,* 74 Wis. 2d 425, 457, 247 N.W.2d 80, 97 (1976). In this case the trial court's refusal to allow Bjerkaas's attorney to argue to the jury that it could decline to follow the law should it wish to do so was a considered and reasoned decision fully in accord with applicable law. As such, it was a proper exercise of discretion and will not be disturbed. *See Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987).

*By the Court.*—Judgment and order affirmed.