STATE of Wisconsin, Plaintiff-Respondent,

v.

TEE & BEE, INC., Defendant-Appellant.

Court of Appeals

*No. 98–0602. Submitted on briefs June 1, 1999.—Decided July 20, 1999.*

(Also reported in 600 N.W.2d 230.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeff Scott Olson* of *The Jeff Scott Olson Law Firm* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Kenneth R. Berg*, assistant district attorney of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

WEDEMEYER, P.J.   Tee & Bee, Inc., d/b/a Super Video (Super Video), appeals from an order entered in a small claims forfeiture action, after a jury found a sexually explicit video, "Wall to Wall The Way You Like It, Vol. 13," which was sold at Super Video, to be obscene. Super Video claims: (1) the trial court erroneously exercised its discretion when it excluded (a) the testimony of an expert witness, Dr. Joseph E. Scott, (b) any reference to a state-wide public opinion survey, (c) the testimony of a defense investigator as to the widespread availability of similar videos, and (d) evidence that two sexually explicit videos were recently found not obscene by a jury in Kenosha County; (2) its due process right to present a defense was violated when all of this material was excluded; (3) the trial court erroneously exercised its discretion when it instructed the jury; (4) the State's closing argument was improper and prejudicial; and (5) juror misconduct affected the verdict. Our supreme court recently decided that excluding the evidence that Super Video challenges does not constitute an erroneous exercise of discretion. *See County of Kenosha v. C&S Management, Inc.*, 223 Wis. 2d 373, 588 N.W.2d 236 (1999). Therefore, we must conclude that the trial court here did not erroneously exercise its discretion on the evidentiary issues and that the due process issue, dependent upon the exclusion of the challenged evidence, must also be rejected. However, because the trial court erred when it instructed the jury and the State's closing was improper, we reverse the order and remand for a new trial.[1]

---

[1] Based on our disposition, the alleged juror misconduct issue is moot and we need not address Super Video's conten-

## I. BACKGROUND

On January 12, 1995, an undercover police detective purchased a sexually explicit video from Super Video. The video was titled: Wall to Wall The Way You Like It, Vol. 13. The State filed a civil forfeiture complaint against Super Video pursuant to § 944.21(3) STATS.[2] Small claims Court Commissioner Audrey Brooks determined that the video at issue was not obscene. The State appealed to the circuit court, requesting a jury trial.

The jury found the video obscene. The trial court imposed a $2,500 civil forfeiture. Super Video appeals.

## II. DISCUSSION

A. *Evidentiary Issues.*

■

Super Video concedes, and we agree, that the evidentiary issues and the due process claim are controlled by *C&S*. In *C&S*, our supreme court concluded that excluding a telephone survey indicating statewide community standards, and Dr. Scott's testimony (a witness that Super Video wished to call in this

tions on this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need to be addressed).

[2] Section 944.21(3), STATS., provides:

Whoever does any of the following with knowledge of the character and content of the material or performance and for commercial purposes is subject to the penalties under sub. (5):

(a)   Imports, prints, sells, has in his or her possession for sale, publishes, exhibits, or transfers any obscene material.

(b)   Produces or performs in any obscene performance.

(c)   Requires, as a condition to the purchase of periodicals, that a retailer accept obscene material.

case) to complement the survey, did not constitute an erroneous exercise of discretion because the "survey respondents were not 'sufficiently apprised of the nature of the charged materials,' " and, therefore, the survey results were irrelevant. *See C&S*, 223 Wis. 2d at 412, 588 N.W.2d at 254. It further concluded that Dr. Scott's testimony, absent the survey, was also irrelevant. *See id.* at 415, 588 N.W.2d at 255. Finally, the *C&S* decision held that excluding evidence of other videos, which were found not to be obscene by another jury in a different case, was not erroneous because presentation of the other videos "could only work to confuse this jury." *Id.* at 416, 588 N.W.2d at 256. We are bound by our supreme court's rulings. Accordingly, we must reject Super Video's evidentiary challenges.

*B.  Jury Instruction and Closing Argument.*

■■■■ Super Video also contends that the jury instructions misstated the law and that the prosecutor's closing argument was improper and prejudicial. We examine these issues together because they are intertwined. A trial court has broad discretion in determining what instructions should be given to the jury, *see Vogel v. Grant-LaFayette Elec. Co-op.*, 201 Wis. 2d 416, 429, 548 N.W.2d 829, 835 (1996), and in determining whether counsel's arguments to the jury were improper, *see State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498, 501 (Ct. App. 1992). We will reverse the trial court's determinations if there is an erroneous exercise of discretion. *See id.*; *State v. Bjerkaas*, 163 Wis. 2d 949, 963, 472 N.W.2d 615, 620 (Ct. App. 1991).

Specifically, Super Video objects to the jury instructions because: (1) the trial court refused to give the requested instruction on the "tolerance standard"

and instead instructed the jury to the contrary; (2) the trial court instructed the jury using an erroneous definition of "prurient interest;" and (3) the trial court refused to give the requested instruction defining the "community" as the State.[3] Super Video contends that the instructional errors were further magnified by the prosecutor's closing argument because the prosecutor referred to the erroneous instructions. Super Video also argues that the prosecutor's closing referred to facts not in evidence.

---

[3] The trial court also refused to give Super Video's requested instruction, which provided:

> Although it would no doubt be easier for you to apply a current view of what is obscene, the law requires you to apply . . . statewide community standards which existed at the time the movie was sold, that is to say, in January, 1995.
>
> As the government has the burden to prove each and every element of the offense charged, if the government has failed to produce evidence on what the statewide community standards were in January, 1995, you may consider that lack of evidence as reason to acquit the defendant.

Super Video concedes that the State is not required to produce an expert to testify as to community standards, *see Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 (1973); however, it argued that the State still has the burden on this element and that the jury should be told it has the option to acquit if the State does not provide evidence of the community standards. Super Video cites a case from Hawaii, which requires proof of the community standard as a prerequisite before the jury can determine the defendant breached the standard. *See State v. Kam*, 726 P.2d 263, 265 (Haw. 1986). We need not reach this issue, however, because the other instructional errors, combined with the improper closing, justify reversal for a new trial. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (asserting that cases should be decided on the narrowest possible grounds).

We conclude that the jury instructions misstated the law, and the prosecutor's closing exacerbated the error by referring to the incorrect law.

### 1. Tolerance Standard.

Super Video requested the following instruction:

> Not all depictions of sexual conduct are patently offensive. The line between protected expression and punishable obscenity must be drawn at *the limits of the community's tolerance* rather than in accordance with the dangerous standards of individual propriety and taste. You must judge the film according to the evidence presented about the community's standards, not according to your own individual taste and preferences. You must put your personal beliefs aside.

(Emphasis added.) The trial court rejected the requested instruction and instead instructed the jury that:

> Contemporary community standards are defined in the laws as *the prevailing accepted standards* existing as of January 12, 1995, *not what is tolerated,* of average adult people in the State of Wisconsin. You are entitled to draw your own . . . knowledge of the views of the average person in this community in arriving at this determination.

(Emphasis added.) The instruction given was contrary to the law governing obscenity. "[C]ontemporary community standards must be applied by juries in accordance with their own understanding of the *tolerance of the average person* in their community." *Smith v. United States*, 431 U.S. 291, 305 (1977) (emphasis added). Accordingly, when the trial court instructed the jury as indicated, it misstated the law.

## 2. Prurient Interest.

Super Video also contends that the trial court erred when it instructed the jury as to the definition of prurience. The trial court instructed:

> Appealing to the prurient interests means the material *attempts to or intends to* appeal generally to a shameful or morbid interest in sex, nudity or excretion which *goes substantially beyond customary limits of candor in description or representation of such matters.* The material need not sexually stimulate the average person. The material must be considered as a whole, looking at the dominant theme, and should not be considered on the basis of isolated passages.

(Emphasis added.) Super Video argues that this instruction was erroneous in two ways: (1) the "attempts to or intends to" language erroneously expanded the instruction; and (2) the "substantially beyond customary limits" language is not relevant to prurience, but rather is a part of the definition of patent offensiveness. We agree that the addition of the "attempts to or intends to" language rendered the instruction a misstatement of the law.

Prurience has been defined as "a shameful or morbid interest in nudity, sex, or excretion," and a "thing is obscene if, . . . it[ ] . . . appeal[s] to prurient interest." *C&S*, 223 Wis. 2d at 397, 588 N.W.2d at 248 (citing *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957)) (internal quotation marks omitted). "Attempts to and intends to" are not elements of the offense, nor properly included in the definition of prurience. The addition of these words erroneously expanded the definition and the law.

With regard to the second part of Super Video's argument, we acknowledge that the "goes substantially beyond" language is more appropriately set forth as the definition of patently offensive. In fact, the trial court repeated the definition in the correct place. Nevertheless, placing the patently offensive standard in combination with prurience does not constitute prejudicial error. To be obscene, a thing must both appeal to prurient interest *and* be patently offensive. Thus, placing the patently offensive definition in both places of the instruction probably did not mislead the jury.

### 3. Scope of Community.

Finally, Super Video also contends that the trial court's instructions were erroneous because it refused to give an instruction that clearly defined "community" as the State of Wisconsin. We agree that this was instructional error.

Because obscenity and First Amendment rights are matters of statewide concern, one community may not deem noncriminal that which is criminal in another community and statewide community standards must be used in determining whether material is obscene. *See Court v. State*, 63 Wis. 2d 570, 576–77, 217 N.W.2d 676, 679 (1974). This must be made clear to the jury. The instructions given by the trial court failed to make this clear.

Although one instruction given by the trial court did refer to the community as the State of Wisconsin, "[c]ontemporary community standards are defined . . . [by] average adult people in the State of Wisconsin," the sentence that followed referred to the jury drawing upon its own knowledge of the views of the average person "in this community." We agree with Super

Video that, without clear instruction, the common meaning of "community" is typically not the State, but a smaller geographical area, such as the city or county from which the jurors were drawn. Thus, the jury may have been misled into believing that a county or even a neighborhood standard, rather than a state standard, was to be applied.

### 4. Closing Argument.

In the State's closing, the prosecutor emphasized the errors in the jury instructions. The prosecutor argued:

> Is it obscene . . . because it violates the standard? We don't always meet the standard. Sometimes we fall short. Sometimes we tolerate, as in this jury instruction the judge has indicated to you. *The standard is not what is tolerated*, not what some people get away with, not the worst. The standard is what we look at, what we look forward to.

(Emphasis added.) Thus, the prosecutor argued incorrect law. The jury was told repeatedly that the standard is not what is tolerated. This was wrong. What is tolerated is the standard by which obscenity is governed. *See Smith*, 431 U.S. at 305.

The prosecutor also repeatedly referred to "community" in a manner indicating "community" meant a smaller geographical area rather than the State of Wisconsin. The prosecutor referred to: "our community," "goes beyond what we will allow in this community" and "the community you live in, the community I live in."

455

## III.  CONCLUSION

Based on the combination of errors in the jury instructions, coupled with the improper closing argument exacerbating those errors, we conclude that the jury was probably misled, *see Fischer v. Ganju,* 168 Wis. 2d 834, 849–50, 485 N.W.2d 10, 16 (1992), and the improper closing affected the fairness of the trial, *see United States v. Young,* 470 U.S. 1, 11–12 (1985).[4] If the freedom of speech protected by the First Amendment is to retain its transcendent value, *see Speiser v. Randall,* 357 U.S. 513, 525 (1958), First Amendment interests must be afforded special protection, *see Marsh v. Alabama,* 326 U.S. 501, 509 (1946). Because the regulation of obscenity is often separated from protected expression only by a "dim and uncertain line," it must be accomplished through "procedures that will ensure against the curtailment of constitutionally protected expression." *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66 (1963). Accordingly, we reverse and remand for a new trial.

---

[4] We also caution the prosecutor against using, in closing argument, evidence that was not a part of the record *and* which constituted evidence that Super Video was prohibited from introducing. The prosecutor argued to the jury that comparable materials were not available in the community. This information was not contained in the record and, therefore, was improper. *See State v. Neuser,* 191 Wis. 2d 131, 142, 528 N.W.2d 49, 53–54 (Ct. App. 1995). Further, the prosecutor argued exactly what Super Video was not allowed to put into evidence, which was also improper. *See State v. Albright,* 98 Wis. 2d 663, 677, 298 N.W.2d 196, 204 (Ct. App. 1980).

*By the Court.*—Order reversed and cause remanded with directions.