STATE of Wisconsin, Plaintiff-Respondent,

v.

Frank M. ZDZIEBLOWSKI, Defendant-Appellant.

Court of Appeals

*No. 2014AP619–CR. Oral argument October 9, 2014.
—Decided November 6, 2014.*

2014 WI App 130

(Also reported in 857 N.W.2d 622.)

103

104

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison. There was oral argument by *Donald T. Lang*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *Christine A. Remington*.

Before Blanchard, P.J., Higginbotham and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J.   A jury convicted Frank Zdzieblowski of operating a vehicle with a prohibited blood alcohol concentration as a sixth offense and felony bail jumping. Zdzieblowski argues on appeal, as he did before the circuit court after trial, that he is entitled to a new trial based on plain error or in the interest of justice, because improper questioning of prospective jurors by the prosecutor during voir dire compromised his constitutional right to a jury trial. Specifically, Zdzieblowski argues that when the prosecutor during voir dire elicited a promise from prospective jurors that they would convict if the State proved the elements of the charged crimes beyond a reasonable doubt, and then reminded the jurors of that promise in his rebuttal closing argument, that elicited promise diminished Zdzieblowski's constitutional right to a jury trial by eliminating the jury's power to exercise its nullification authority.[1] We

---

[1] Juries have "the power to nullify the objectively correct application of the law," "in the sense that they may acquit a defendant in a criminal case on the basis of extraneous consid-

conclude that in the circumstances of this case, and consistent with Wisconsin precedent pertaining to jury nullification, the prosecutor's unobjected to questioning and rebuttal closing argument neither rose to the level of plain error nor warranted a new trial in the interest of justice. Therefore, we affirm.

## BACKGROUND

¶ 2.   The State charged 73-year-old Zdzieblowski with operating a vehicle while intoxicated as a sixth offense, operating a vehicle with a prohibited blood alcohol concentration greater than .02, and bail jumping. Evidence supporting these charges arose following a valid traffic stop. Zdzieblowski told the officer who stopped him that he had drunk two beers at his daughter's home within one to two hours before the stop. Zdzieblowski did not display any signs of intoxication before or during the stop. His blood alcohol concentration at the time of the stop was .035. As of the date of the stop, Zdzieblowski was limited by law to a .02 blood alcohol concentration while driving, and was separately subject to a bond condition requiring absolute sobriety (resulting in the bail jumping charge). The case proceeded to a jury trial on the charges of operating a vehicle with a prohibited blood alcohol concentration and bail jumping.

¶ 3.   This appeal turns on what took place during the prosecutor's questioning of prospective jurors before the trial commenced, along with his reference to

erations, even when the defendant may be objectively guilty in light of the facts of the case and the court's instructions." *State v. Bjerkaas*, 163 Wis. 2d 949, 960, 472 N.W.2d 615 (Ct. App. 1991) (emphasis omitted).

107

that questioning in his rebuttal closing argument. The prosecutor said the following while questioning prospective jurors:

> If you are selected to serve on this jury and you are satisfied beyond a reasonable doubt that the evidence proves [the defendant] did consume alcohol in violation of that bond condition, raise your hand if you would find the defendant guilty in that situation[.]
>
> . . . .
>
> . . . If I prove and the evidence proves beyond a reasonable doubt that the defendant drove a vehicle on a public highway and that at that time his blood alcohol concentration was a .2 — excuse me — .02 or higher, if you're satisfied beyond a reasonable doubt of that, is there anyone who despite that would still find the defendant not guilty?
>
> I'm not seeing any responses.
>
> Raise your hand if you can promise that if you are satisfied beyond a reasonable doubt that the defendant drove with a .02 or higher, that you will find the defendant guilty. If you can make that promise, raise your hand.
>
> I'm seeing almost everyone's hand up.
>
> [Juror], I didn't see you raise your hand . . . . I will rephrase the question.
>
> So there are certain elements I need to prove for the prohibited alcohol concentration offense. One is that the defendant drove a vehicle on a highway, and the second is that at that time his blood alcohol concentration was a .02 or higher.
>
> And so if you are selected to sit on this jury panel and you hear the testimony and you make factual determinations and you find beyond a reasonable doubt

108

that both of those elements have been proved, would you find the defendant guilty?

. . . .

. . . Was there anyone else who couldn't raise [a] hand [in response] to that question, wasn't able to make that promise?

So my understanding is, if those elements are proved, that [the defendant] drove with a blood alcohol concentration over a .02, you can find the defendant guilty?

Thank you.

During follow-up questioning, still during voir dire, the prosecutor asked:

I had asked the question if at the close of evidence after you have heard the witnesses, you have seen the evidence, the stipulations and exhibits, if you are satisfied that the evidence shows beyond a reasonable doubt that the defendant drove a motor vehicle and that his blood alcohol concentration was at or exceeded a .02, raise your hand if you can promise that you would find the defendant guilty.

. . . .

. . . If it's proved beyond a reasonable doubt, you can say you will find the defendant guilty?

¶ 4.   During his rebuttal closing argument, the prosecutor stated:

And I'd like to bring all of us back to jury selection. I asked you all a question, "If the State proves beyond a reasonable doubt and you're satisfied with the evidence that the defendant was at or above .02, to promise to find the defendant guilty." I asked you that question.

109

"If the evidence satisfies you, can you make that promise?" Every juror raised [a] hand. Every juror could make that promise.

This evidence does satisfy beyond a reasonable doubt that the defendant drove, and he had a PAC of .02 or above. You should convict for those reasons.

¶ 5. Defense counsel did not object to the prosecutor's questions during voir dire or to the prosecutor's rebuttal closing argument.

¶ 6. The jury convicted Zdzieblowski of operating a vehicle with a prohibited blood alcohol concentration and bail jumping.

¶ 7. Zdzieblowski filed a postconviction motion for a new trial "because his right to a trial by jury was compromised by the prosecutor's voir dire questioning impermissibly soliciting a promise from prospective jurors to return a guilty verdict if hypothetical conditions were satisfied and by the prosecutor's subsequent closing argument invoking this promise." The circuit court denied the motion after briefing and oral argument. Zdzieblowski appeals his judgment of conviction and the circuit court's order denying his postconviction motion.

## DISCUSSION

¶ 8. Zdzieblowski argues that the "nub" of his contention is that, by eliciting a promise from prospective jurors to convict if all of the elements were proven beyond a reasonable doubt, the prosecutor eroded Zdzieblowski's right to a trial by jury, because this caused the jury to surrender its power to nullify from the outset of the case. Accordingly, Zdzieblowski requests a new trial based on plain error or in the interest of justice. As explained below, we deny his request

110

because we conclude, based on the record, that any error involving the questioning was harmless and that the controversy was fully tried.

### Propriety of Questions Eliciting a Promise to Convict

¶ 9.  The parties have not identified, and our research has not revealed, any Wisconsin case that has addressed the precise issue on appeal, namely, the propriety of questioning that asks prospective jurors to promise to convict if the State proves the elements of the crime beyond a reasonable doubt. Cases from other states that have considered questions from prosecutors most similar to the questioning that occurred here have found the questions to be proper. We summarize some of these cases, because they illuminate the basic issues.

¶ 10.  In *Urtado v. State*, 333 S.W.3d 418 (Tex. App. 2011), the question posed by the prosecutor during voir dire was:

> Now, here's the question. [*Assume that*] *I have proven to you beyond a reasonable doubt [the] elements of aggravated assault,* that the defendant on or about a certain date in Travis County intentionally, knowingly, or recklessly caused serious bodily injury to a victim by stabbing him with a knife. The self-defense claim, it may or may not be raised, if I prove to you beyond a reasonable doubt—because the burden shifts back to the State. If I prove to you beyond a reasonable doubt that the defendant was not protecting himself against the unlawful use of deadly force, it wasn't self-defense, will you convict him of aggravated assault?

*Id.* at 426–27 (emphasis added).

¶ 11.  The Texas appellate court called this question a "commitment question" and found it proper because the law "requires the commitment," in that the

question merely asked the prospective jurors whether they could follow what the law required:

> In this case, the State asked potential jurors whether they could convict a defendant of aggravated assault if, after the State proved all of the elements of the offense beyond a reasonable doubt, a self-defense claim was raised and the State then proved beyond a reasonable doubt that self defense did not apply. Because this commitment is required by the law, it is permissible . . . .

*Id.* at 427.

¶ 12.    In *State v. Sanchez*, 785 P.2d 224, 229 (N.M. 1989), the prosecutor asked prospective jurors, without objection,

> Can everyone here promise that if the state does its job correctly, that is, provides enough evidence to base a conviction beyond a reasonable doubt, that they will return a guilty verdict? Is there somebody here who can't do that? I need to know. Can everybody here make that promise?

The New Mexico Supreme Court held that allowing this questioning was not fundamental error, explaining that "a *conditional* question asking whether the jury would return a verdict in favor of the state, *if the state proves its case,* is permissible." *Id.* (alteration in original).

¶ 13.    In contrast, the Mississippi Supreme Court in *Stringer v. State*, 500 So. 2d 928, 938–39 (Miss. 1986), found impermissible the prosecutor's questions that asked potential jurors to commit that they would not consider factors that the law "demands" jurors to consider in deciding whether to return the death penalty. In that case, the prosecutor asked prospective jurors if they could not vote for the death penalty if the defendant did not himself pull the trigger or because of

sympathy for the defendant. *Id.* at 938. In closing argument, the prosecutor reminded the jurors that they "promised" him that they would vote for the death penalty. *Id.* The court found that the closing argument turned the voir dire questions into a promise, and held that the questions and closing argument, along with "other tactics used by the prosecution during the sentencing phase," were improper because they asked prospective jurors to promise to return the death penalty regardless of mitigating factors, thereby "prevent[ing]" the jurors from considering all relevant factors. *Id.* at 938–39.

¶ 14.    The principles that can be derived from this persuasive authority are that voir dire questions that assume proof of, or demand consideration of, only what the law requires are proper because they ask that the jurors do no more than promise to fulfill their duty to follow the law, and do not limit the jurors' consideration of any pertinent factors or invite them to prejudge any particular fact. Under this view, the prosecutor's questioning in Zdzieblowski's case was not a violation of his right to a trial by jury. We are persuaded by this view.

¶ 15.    Zdzieblowski presents three reasons to support his view that the questioning here was not proper, even if limited to the elements of the crime.[2] First, he

[2] Zdzieblowski contends that the prosecutor's questioning was improper for yet another reason, because it asked prospective jurors to promise to convict if certain hypothetical facts were established. For the following reasons, we reject this separate argument.

Zdzieblowski points to WIS. STAT. § 805.08(1) (2011–12), which provides that in questioning prospective jurors, "such examination shall not be repetitious or based upon hypothetical questions," and to statements in treatises, articles, and cases

asserts that the questioning was improper because it forged an improper, personal bond between the State and each juror, consisting of the juror's promise to the State and creating an imbalance against Zdzieblowski, because the jury made no pledge to him. Second, Zdzieblowski asserts that the questioning was improper because it bound the jurors to pre-judgment of the case before hearing any evidence or instruction. Third, and most important according to Zdzieblowski, he asserts that the questioning was improper because it eliminated his "full right" to a trial by jury by committing jurors to forego exercising their power to nullify, even if nullification ultimately would have appeared to them to be the most just outcome.

---

from other states which acknowledge the impropriety of asking prospective jurors how they would decide a case given a particular hypothetical set of facts. The State responds that, notwithstanding the statute, hypothetical questions are commonly used, and perhaps even necessary, to uncover bias.

We do not address this dispute because the questioning in this case did not involve hypothetical facts; rather, it referred only to the elements of the crimes. The questions asked the jurors to assume not that specific hypothetical facts were proven, but to assume that the elements of the crimes were established. Thus, the "assumption" part of the questioning was indistinguishable from asking that the prospective jurors hold the State to its burden of proving beyond a reasonable doubt all of the elements of the crimes.

The problem, according to Zdzieblowski, is that the questioning went beyond holding the State to its burden of proof, by asking the prospective jurors to promise an outcome. Thus, Zdzieblowski confirms that it was the securing of the promise to convict, not the assumption that the elements of the crime were established beyond a reasonable doubt, that made the questioning here problematic, and that is the issue that we address in this opinion.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 16. Zdzieblowski correctly frames the issue to the extent that he speaks of the jury's *power* to nullify, not its *right* to do so. *See State v. Bjerkaas*, 163 Wis. 2d 949, 961, 472 N.W.2d 615 (Ct. App. 1991) (" 'jury nullification is just a power, not also a right' ") (quoted source omitted). Thus, just as a jury has no "right" to exercise its nullification power, no party has "a *right* to have a jury decide a case contrary to law or fact, much less a right to an instruction telling jurors they may do so or to an argument urging them to nullify applicable laws." *Id.* at 960–61 (alteration in original).

¶ 17. The State responds that the questioning engaged in by the prosecutor here, eliciting a promise to convict, "could be seen as unfair" to the extent that the defense cannot in response tell the jury that it can acquit even if the State meets its burden of proving the elements of the crime. For this reason, the State suggests that what the prosecutor did here is a "practice to avoid." But, the State asserts, the questioning did not "rise[]to the level of being a plain error or [keep] the real controversy from being tried, because of the facts of this case."

¶ 18. We address the issues of plain error and whether the real controversy was not fully tried in the two sections that follow. We conclude that, even if allowing the prosecutor to elicit promises from prospective jurors here was error, it was harmless, and the controversy was fully tried.

*Request for a New Trial Based on Plain Error*

¶ 19. Under the "plain error doctrine," recognized in Wis. Stat. § 901.03(4), appellate courts may review errors that were otherwise forfeited by a party's failure

to object. *State v. Jorgensen*, 2008 WI 60, ¶ 21, 310 Wis. 2d 138, 754 N.W.2d 77. The doctrine applies to an "error [that] is fundamental, obvious, and substantial," such as " 'where a basic constitutional right has not been extended to the accused.' " *Id.*, ¶¶ 21–23 (quoted source omitted). However, courts do not invoke the plain error doctrine where the State shows that the error was harmless. *Id.*, ¶ 23. "To determine whether an error is harmless, this court inquires whether the State can prove beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[]." *Id.* (internal quotation marks and quoted source omitted).

¶ 20.  The following are among the factors to consider in determining whether an error is harmless: "(1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case." *Id.*

¶ 21.  Zdzieblowski argues that the prosecutor's questioning of prospective jurors elicited a promise from each juror that deprived him of a jury that was free to exercise its power of nullification, thereby violating his right to a trial by jury, and that this violation of a basic constitutional right is plain error. Zdzieblowski further argues that this violation is not "amenable" to the harmless error rule because once the trial proceeded, the jury was not "the jury [to] which Mr. Zdzieblowski was entitled." However, with regard to

116

plain error, as Zdzieblowski's counsel conceded at oral argument, he is aware of no case that has held that the kind of promise questioning engaged in by the prosecutor in this case violated a defendant's right to a trial by jury. Moreover, we are persuaded by the State's argument that: (1) even if the questioning did constitute error, it was harmless because the evidence establishing the elements of the crimes charged was overwhelming, such that a rational jury would have found Zdzieblowski guilty absent the error; and (2) the harmless error analysis does not include consideration of the availability of the jury's power of nullification.

¶ 22.  As noted above, the harmless error analysis involves inquiring "whether the State can prove beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[]." *Jorgensen*, 310 Wis. 2d 138, ¶ 23 (internal quotation marks and quoted source omitted). Exercising the power of jury nullification is not one of the factors, quoted above, which our supreme court has identified to assist in making that assessment. *See id.* Nor could the availability of nullification reasonably be an additional factor; if a court were required to consider the possibility that a jury could exercise its power of nullification, then the State could never meet its burden of showing that a rational jury could convict on the evidence presented at trial. As the State explained at oral argument, "If the harmless error analysis included some consideration of jury nullification," the harmless error showing "could never be met."

¶ 23.  Zdzieblowski does not dispute that a rational jury could have convicted him on the evidence presented at trial. Rather, he argues that "the defense . . . essentially boiled down to an implicit invita-

tion to employ jury nullification." Under the well-established plain error case law summarized above, together with the equally well-established legal principle that no defendant has the right to even make such an invitation, *Bjerkaas*, 163 Wis. 2d at 960, the harmless error analysis does not include consideration of jury nullification. Accordingly, we agree with the State that if the promise questioning by the prosecutor during voir dire was error, it was harmless.[3]

*Request for a New Trial in the Interest of Justice*

■■■■■

¶ 24.　Appellate courts may also reverse judgments "where unobjected-to error results in either the real controversy not having been fully tried or for any reason justice is miscarried." *Vollmer v. Leuty*, 156 Wis. 2d 1, 17, 456 N.W.2d 797 (1990); *see also* WIS. STAT. §§ 751.06, 752.35.

> The first category of cases arises when the real controversy has not been fully tried. Under this first category, it is unnecessary for an appellate court to first conclude that the outcome would be different on retrial. The second class of cases is where for any reason the court concludes that there has been a miscarriage of justice. Under this second category of the statutes, an appellate

---

[3] For a similar conclusion based on a similar analysis, see *United States v. Fambro*, 526 F.3d 836, 847–48 (5th Cir. 2008):

> We do not approve of "commitment" questions . . . . However there was no plain error . . . . [W]e are unaware of any decision by the Supreme Court or any federal appellate court that has reversed a district court because it allowed commitment questions on voir dire in violation of the due process clause or the Sixth Amendment. Moreover, there was considerable evidence from which the jury could reasonably conclude that [the defendant was guilty]. We therefore cannot say that the error, if any, was plain.

> court must first make a finding of substantial probability of a different result on retrial.

*Vollmer*, 156 Wis. 2d at 19.

¶ 25.  Zdzieblowski argues that we should reverse in the interest of justice under the first prong, because the real controversy could not be fully tried once the jury "entered the jury room having given away its nullification power way back at the voir dire." To the contrary, the record shows that the real controversy was fully tried. First, as noted above, the prosecutor's questioning of prospective jurors referred only to the elements of the crimes charged, not to any hypothetical facts that might predispose a juror before any evidence was presented. Second, the trial transcript reveals that the parties fully tried those elements, namely whether Zdzieblowski was driving with a blood alcohol concentration above .02 and whether he violated a condition of his bond requiring absolute sobriety.

¶ 26.  Third, the circuit court properly instructed the jury on the elements of the crimes. The court also properly instructed that the jurors were to follow the law and consider only the evidence presented, and that remarks by counsel were not evidence:

> It is your duty to follow all of these instructions. Regardless of any opinion you may have about what the law is or ought to be, you must base your verdict on the law I give you in these instructions. Apply that law to the facts in the case which have been properly proven by the evidence.
>
> Consider only the evidence received during this trial and the law given to you . . . .
>
> . . . .
>
> If you are satisfied beyond a reasonable doubt that

119

all the elements of this offense have been proved, you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty.

. . . .

. . . You are to decide the case solely on the evidence offered and received at trial . . . .

. . . .

Remarks of the attorneys are not evidence . . . .

. . . .

Consider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence.

The jury is presumed to have followed the court's instructions. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) ("[O]nce the jury has been properly instructed on the principles it must apply to find the defendant guilty beyond a reasonable doubt, a court must assume on appeal that the jury has abided by those instructions.").

¶ 27. Fourth, the transcript shows that the prosecutor's reference to the promise elicited during voir dire was only a brief reference during rebuttal closing argument, and that the promise was not referred to at all in the State's closing argument. The focus of the prosecutor's closing and rebuttal arguments was on how the evidence established, beyond a reasonable doubt, the elements of the crimes charged. The brief reference to the jurors' pre-trial promise to convict, should the State prove the elements of those crimes beyond a reasonable doubt, did not prevent a full trial of the controversy presented.

¶ 28. In sum, we conclude that Zdzieblowski is not entitled to a new trial in the interest of justice, because the controversy was fully tried.

¶ 29. Before concluding, we make several observations because of the significance of the issues raised by "promise" questioning, consistent with the State's position on appeal that "promise" questioning by counsel may be a practice best avoided. We begin by observing that, in posing the "promise" questions here, the prosecutor appears to have chosen his words with care, focusing the jury exclusively on a scenario in which the State has in fact proven the elements beyond a reasonable doubt, without taking even one step in the direction of discussing *how* the State might prove the elements or the ways in which the defense might seek to undermine the State's case. Regardless whether this was proper or not, it is easy for us to envision variations in attempts to emulate, or expand on, this approach that would be improper. Examples of such attempts include using hypothetical facts or eliciting promises to pre-judge based on references to particular forms or modes of proof, or based on different ways of framing legal standards. In other words, questions that might be reasonably interpreted to lead prospective jurors to think that they are committing to reaching a particular factual conclusion, or that they are cabining their consideration of relevant factors regarding an element or defense, might rise to the level of a violation of a defendant's right to a jury trial. *See, e.g., Stringer*, 500 So. 2d at 938–39.

¶ 30. Timely pre-trial motions or objections, along with the circuit court's authority to exercise its discretion to supervise voir dire in virtually all respects, are available to protect against such potential violations.

121

Indeed, given the chance for some forms of "promise" questions to generate at least confusion among potential jurors, if not possible violations of the constitutional rights of defendants, some circuit courts might find it advisable to limit counsel in this area in advance of any voir dire conducted by counsel.

¶ 31. However, we emphasize that, as explained above, given the facts here and the arguments of the parties, we need not and do not decide the degree to which any particular form of "promise" questioning may violate a defendant's right to trial, including what occurred here.

## CONCLUSION

¶ 32. For the reasons stated above, we conclude that in this case, and consistent with Wisconsin precedent pertaining to jury nullification, the prosecutor's questioning of prospective jurors, eliciting a promise to convict if the elements of the crimes charged were established beyond a reasonable doubt, along with the prosecutor's reference to the elicited promise in his rebuttal closing argument, neither rose to the level of plain error nor warranted a new trial in the interest of justice. Therefore, we affirm.

*By the Court.*—Judgment and order affirmed.